[No. 44765. En Banc. September 7, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. LAWRENCE D. WORKMAN, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. STEVEN L. HUGHES, *Respondent.*

444

Donald C. Brockett, Prosecuting Attorney, and Gregory G. Staeheli, Deputy, for appellant.

Richard L. Cease, Public Defender, and Gerald A. Horne and Roger K. Gigler, Assistants, for respondents.

HOROWITZ, J.—This consolidated appeal results from orders entered in two cases granting new trials following jury verdicts of guilty. The crime charged in each case, attempted robbery in the first degree while armed with a deadly weapon which was also a firearm, involves sections of both RCW Title 9, Crimes and Punishments, and the newer Title 9A, entitled Washington Criminal Code.[1]

Defendants Lawrence Dean Workman and Steven Lynn Hughes were convicted of attempted first–degree robbery while armed with a deadly weapon which was also a firearm. The judges at their separate trials ordered new trials on several grounds. The State appeals from these orders. Since the cases stem from the same events and present related issues, they were consolidated on this appeal. The issues presented are (1) whether the crime of unlawfully carrying a weapon is an included offense of attempted first–degree robbery, (2) whether the defendants were entitled to an instruction on the defense of abandonment of the

---

[1] The crime of attempt and the crime of first–degree robbery are now defined in RCW Title 9A. RCW 9A.28.020 (attempt); RCW 9A.56.200 (first–degree robbery). The enhanced penalty under the uniform firearms act for committing a felony while in possession of a firearm, and restrictive parole provisions for persons convicted of a felony while armed with a deadly weapon are found in RCW Title 9. RCW 9.41.025 (uniform firearms act enhanced penalty); RCW 9.95.040 (parole restrictions). In the course of this opinion we consider a third statute found in title 9, the offense of unlawfully carrying a weapon. RCW 9.41.270.

attempt, (3) whether the enhanced penalty of the uniform firearms act applies to the crime charged here, and (4) whether the application of the firearms act and RCW 9.95 regarding parole restrictions deny defendants equal protection. We modify and affirm the orders granting new trials for the reasons stated below.

Defendants Workman and Hughes spent the evening of July 22, 1976, drinking and dancing with their wives in State Line, Idaho. On the way home to Moses Lake, Washington, after the taverns closed, the defendants decided to commit a robbery. Taking the freeway exit for Spokane, they spotted the Fill–em' Fast Gas Station and chose it as their target. They parked their car in an alley behind the station. Leaving their wives asleep, they took a .22 caliber rifle from the trunk of the car and loaded it. They also took a gunny sack with holes punched in it for eyeholes, and a stocking cap, both intended for use as masks. Then they walked up the alley to a fence behind the station and waited. This was normally a busy time at the station. After about 15 minutes they moved to a hiding place just behind the pay booth, where they waited again.

At about 2:30 a.m. when business at the station was slack, the attendant took a short walk to get some fresh air and saw the defendants, unmasked, behind the pay booth. He returned to the booth and called the police. Defendant Workman later appeared at the window without a mask or gun and asked for a cigarette and match. The attendant refused, and Workman rejoined defendant Hughes. During this period, according to defendants' testimony, they were trying to summon the "courage" to commit the robbery and decide how to do it.

Sometime after the cigarette episode an unmarked police car took up a position across the street from the station. The police officer could see both the defendants and a second police car which had turned into the alley behind the station. The first car then pulled into the station.

At that time the defendants, having decided not to go through with their plans, started walking away from the

station. They testified at their trials that they had not seen the police before they decided to leave. They were stopped and arrested in the alley behind the station. Defendant Hughes was found to have the sawed–off rifle concealed under his clothes.

The defendants were each charged with attempted first–degree robbery while armed with a deadly weapon within the meaning of RCW 9.95.040, which was also a firearm within the meaning of RCW 9.41.025 of the uniform firearms act. At their separate trials, each defendant was found guilty, and the juries returned special verdicts finding they had been armed with a deadly weapon which was a firearm. The judges then entered orders granting new trials, and the judge in the Hughes case vacated the special findings on the grounds, in part, that invocation of the two special statutes mentioned above was unconstitutional.

## I
### THE INCLUDED OFFENSE

The court in State v. Hughes found defendant Hughes' proposed instruction on the offense of unlawfully carrying a weapon under RCW 9.41.270 should have been given. Failure to give an instruction on this offense was one of the grounds on which a new trial was granted. We agree that the crime defined by RCW 9.41.270 is an included offense of attempted first–degree robbery under the facts of this case. Where the evidence supports it, an instruction on an included offense should be given. We hold it was error to fail to give the proposed instruction.

Under RCW 9.41.270, it is unlawful to carry any weapon (including a firearm) in a manner, or under circumstances, which warrants alarm for the safety of others. The crime is a gross misdemeanor. The elements of the crime in the context of this case are the carrying of a firearm and the circumstances warranting alarm for the safety of others.

Under the Washington rule, a defendant is entitled to an instruction on a lesser included offense if two conditions are met. First, each of the elements of the lesser

offense must be a necessary element of the offense charged. *State v. Bowen,* 12 Wn. App. 604, 531 P.2d 837 (1975). *See* RCW 10.61.006. *See also* 2 C. Torcia, *Wharton's Criminal Procedure* § 375, at 337 (12th ed. 1975). Second, the evidence in the case must support an inference that the lesser crime was committed. *State v. Snider,* 70 Wn.2d 326, 422 P.2d 816 (1967).

The crime charged in this case is attempted robbery in the first degree. The elements of robbery in the first degree are that the defendant be armed with a deadly weapon (defined in RCW 9A.04.110 as including any firearm) in the commission of a robbery. RCW 9A.56.200.

It is clear that the element of carrying a weapon under RCW 9.41.270, the gross misdemeanor, is a necessary element of the greater crime of first–degree robbery. Likewise, the element of circumstances warranting alarm under the lesser offense is an inherent characteristic of an attempt to commit a robbery. The existence of such circumstances therefore qualifies as a necessary element of the greater offense of attempted first–degree robbery. The first condition of the test for an included offense is thus met here.

The second condition, that the evidence must support an inference that the included crime was committed, is also met. The evidence in this case clearly supports an inference that defendant Hughes was carrying a firearm in a manner warranting alarm for the safety of others. There was also evidence that defendant Workman handled the gun. Unlike the cases cited by the State, this is not a case where finding the elements of the lesser offense is precluded by the evidence at trial. *See, for example, State v. Snider, supra.* Furthermore, while the State contends the facts do not support a finding of the elements of the lesser crime because the station attendant never saw the gun, it is not necessary in order to prove the crime that the attendant have seen it. The statute only requires that the circumstances *warrant* alarm for the safety of others. They need not actively *cause* such alarm. Surely the circumstances of two men who were armed with a rifle and

intending to commit a robbery warrant alarm for the safety of anyone who may chance to be nearby. We therefore conclude the facts here were clearly sufficient to send the issues raised by the lesser crime to the jury.

## II
### THE DEFENSE OF ABANDONMENT

Both orders granting a new trial were based in part on the belief of the trial judge that the defendant was entitled to an instruction on the defense of abandonment. At trial defendants tried to show they abandoned their plan before the crime of attempt was committed. They proposed an instruction on abandonment derived essentially from a New York statute which sets up abandonment of criminal purpose as an affirmative defense to the crime of attempt. The trial courts both rejected the proposed instruction and gave an instruction properly based on our attempt statute, RCW 9A.28.020.

■ The instruction given correctly stated that a person is guilty of attempt if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of the crime. The instruction qualified the meaning of a "substantial step" by stating that the conduct must be more than mere preparation. It was proper to use language from the statute in the instruction. *State v. Hardwick,* 74 Wn.2d 828, 447 P.2d 80 (1968).

Defendants contend, however, that the statutory language, "substantial step," is unconstitutionally vague unless further defined, that an instruction on abandonment is necessary in order to properly define it, and that without the requested instruction they were precluded from arguing their theory of the case to the jury.

■ We must disagree. The question of what constitutes a "substantial step" under the particular facts of the case is clearly for the trier of fact. The instruction given informed the jury that mere preparation would not be sufficient, that something more must be present in order to constitute a substantial step. When preparation ends and an attempt

begins, we have held, always depends on the facts of the particular case. *State v. Nicholson,* 77 Wn.2d 415, 463 P.2d 633 (1969). We cannot agree that the instruction given was unconstitutionally vague.

Furthermore, an instruction relating to abandonment is neither necessary nor even particularly helpful in defining the meaning of a substantial step. Once a substantial step has been taken, and the crime of attempt is accomplished, the crime cannot be abandoned. *See State v. McGilvery,* 20 Wash. 240, 55 P. 115 (1898). *See also* 1 R. Anderson, *Wharton's Criminal Law and Procedure* § 76, at 161 (1957). The defendants' attempt to show they abandoned their plan is thus relevant only if the abandonment occurred before a substantial step was taken. Through arguing their theory at trial, they could only have hoped to show they never took a substantial step toward the specific crime. Abandonment is not, however, a true defense to the crime of attempt under our statute—that is, a showing of abandonment does not negate the State's allegation that a substantial step occurred. Thus, pursuing the theory of abandonment could only be a strategy for showing *why* a substantial step was never taken. Defendants could not thereby show *whether* such a step was taken. We therefore conclude an instruction on abandonment is not necessary as a matter of law to properly define a "substantial step."

Moreover, in this case the instruction given did not preclude defendants from arguing to the jury their theory that they abandoned their plan. It should be noted that the instruction proposed by defendants was not a correct statement of Washington law and could not properly have been given. It implies that abandonment, even after a substantial step was taken, would be a defense. As explained above, this is not the case under our statute.

While we do not find the courts below erred as a matter of law in failing to give an abandonment instruction, we note that some further definition of "substantial step" by this court may be helpful. RCW 9A.28.020, the attempt

statute, was enacted in 1975. It changes the language defining the crime of attempt. Under the earlier statute, RCW 9.01.070, now repealed, the elements of the crime were intent and an *act* tending but failing to accomplish the crime. We held under that statute that the act, however slight, must be overt and clearly show the design of the person to commit a crime. *State v. Nicholson, supra.* We must assume, of course, that the legislature's adoption of different language in the newer statute was intentional. The standard of a substantial step will not be identical to the standard of an overt act.

We note that the Model Penal Code of the American Law Institute employs the "substantial step" standard in its definition of criminal attempt. Model Penal Code § 5.01(1)(c) (Proposed Official Draft, 1962).[1] Under the code, conduct is not a substantial step "unless it is strongly corroborative of the actor's criminal purpose." Model Penal Code § 5.01(2). That subsection also lists examples of conduct which would not be insufficient as a matter of law to constitute a substantial step.[2]

---

[1] "Section 5.01. Criminal Attempt.

"(1) Definition of Attempt. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

"(a) purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

"(b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such result without further conduct on his part; or

"(c) purposely does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] "(2) Conduct which May Be Held Substantial Step Under Subsection (1)(c). Conduct shall not be held to constitute a substantial step under Subsection (1)(c) of this Section unless it is strongly corroborative of the actor's criminal purpose. Without negativing the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law:

"(a) lying in wait, searching for or following the contemplated victim of the crime;

We find it appropriate to adopt the Model Penal Code approach to the definition of a substantial step. As noted by the Supreme Court of Ohio in an opinion adopting the Code definition as a standard for the Ohio statute:

[T]his standard does properly direct attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent.

*State v. Woods*, 48 Ohio St. 2d 127, 132, 357 N.E.2d 1059 (1976). This approach does not conflict with the doctrine already developed in this state regarding the crime of attempt. *See State v. Nicholson, supra.* It does, however, give full recognition to the changes in the statute adopted by the legislature. We therefore hold it would be proper for a trial court to include in its instruction to a jury on the crime of attempt the qualifying statement that in order for conduct to be a substantial step it must be strongly corroborative of the actor's criminal purpose.

## III
### APPLICABILITY OF RCW 9.41.025(1)

After defendant Hughes' trial, the court entered an order vacating the jury's special verdict that the defendant was armed with a deadly weapon under RCW 9.95.040 which was a firearm under RCW 9.41.025. The court held that

---

"(b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

"(c) reconnoitering the place contemplated for the commission of the crime;

"(d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

"(e) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances;

"(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;

"(g) soliciting an innocent agent to engage in conduct constituting an element of the crime."

RCW 9.41.025 has no application to the crime of attempted first–degree robbery, and further that both statutes give the prosecutor an unconstitutional degree of discretion to seek higher penalties for the same offense. The court in defendant Workman's trial also held there was unconstitutional discretion. We deal first with the question whether RCW 9.41.025(1) is to be applied to the crime charged here.

This section is the enhanced penalty provision of the uniform firearms act. It requires the sentencing judge to impose an additional minimum sentence of 5 years, which cannot be suspended or deferred, where a defendant convicted of a first offense has attempted to commit a felony while in possession of a firearm. RCW 9.41.025(1).

This section may be described generically as an "aggravation of penalty" statute, providing an increased penalty where the circumstances of the crime demonstrate an element which aggravates the gravity of the offense. *See State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972). *See also* 4 R. Anderson, *Wharton's Criminal Law and Procedure* § 1788, at 610 (1957).

Defendants maintain this statute was intended to apply to the old robbery statute which did not provide degrees of the offense. The new robbery statute, by contrast, defines any robbery committed while armed with a deadly weapon as robbery in the first degree, a class A felony. RCW 9A.56.200. Since possession of a deadly weapon (which includes any firearm under RCW 9A.04.110) is an element of the crime, and the penalty provided for the robbery presumably takes that aggravating factor into account, defendants argue the enhanced penalty provision of RCW 9.41.025 does not apply to this crime.

The Supreme Court of the United States construed similar statutes in *Simpson v. United States,* 435 U.S. 6, 55 L. Ed. 2d 70, 98 S. Ct. 909 (1978). In that case the defendants were convicted of aggravated bank robbery under a federal statute providing an increased penalty when the robbery is committed with a dangerous weapon. Another statute mandated an additional penalty for commission of a felony with

a firearm. The defendants received the increased penalties under both statutes, and appealed. The Supreme Court held, as a matter of statutory construction, that in a prosecution growing out of a single transaction under the robbery statute, the additional penalty of the second, more general statute may not be imposed. The result was based in part on available legislative history tending to show a legislative intent that the second statute not apply. We have no such record guiding our interpretation of the Washington statutes. The two other grounds relied upon by the majority in *Simpson,* however, are quite relevant to the issue here.

 Referring to the policy of the court not to interpret a criminal statute so as to increase the penalty imposed, absent clear evidence of legislative intent to do so, the court held this "rule of lenity" would preclude construing the statutes so as to allow enhanced penalties under both. *Simpson v. United States, supra* at 914. We recog- nized the "rule of lenity" as applied to a different problem of criminal statutory construction in *State v. Arndt,* 87 Wn.2d 374, 385, 553 P.2d 1328 (1976). The *Simpson* court further relied on the principle of statutory construction that the terms of a specific statute take precedence over a general statute, where both are addressed to the same concern—in this case, the use of dangerous weapons to commit felonies. *Simpson v. United States, supra* at 914.

██ We find this reasoning persuasive. Our uniform fire- arms act, RCW 9.41, represents one approach to providing enhanced penalties for crimes committed with the use of a weapon. The more recent robbery statute addresses the same problem in a more specific way—by defining such a crime as robbery in the first degree and providing an appropriately enhanced penalty. In the absence of. clear legislative intent to the contrary, sound statutory construc- tion leads to the conclusion RCW 9.41.025 cannot be applied so as to impose an additional penalty. We note the California Supreme Court reached a similar conclusion in

construing that state's statutes in *People v. Floyd,* 71 Cal. 2d 879, 457 P.2d 862, 80 Cal. Rptr. 22 (1969). In reaching this result we rely on both the principle of giving precedence to the specific statute, and the rule of lenity.

## IV
### PROSECUTORIAL DISCRETION

The State invoked the provisions of both RCW 9.41.025, discussed in section III above, and RCW 9.95.040 in these cases. Unlike the uniform firearms acts provision, which is addressed to the sentencing court, RCW 9.95.040 is addressed to the parole board, restricting its power to parole a person convicted of commission of a felony while armed with a deadly weapon. Although we hold RCW 9.41-.025 inapplicable to the facts of this case, the constitutional issue presented by the invocation of RCW 9.95.040 is equally relevant to future applications of RCW 9.41.025 to other crimes.

In order to invoke the provisions of either of these statutes in a criminal prosecution, the State must allege possession of a firearm under RCW 9.41.025, and/or possession of a deadly weapon under RCW 9.95.040, in the information. *State v. Cosner,* 85 Wn.2d 45, 530 P.2d 317 (1975). The prosecutor is thus invested with discretion to refrain from invoking these provisions.

The defendants maintain this discretion violates equal protection because the prosecutor may seek varying degrees of punishment for the same criminal element, *i.e.,* possession of a firearm. In the case of RCW 9.41.025 the prosecutor may seek an enhanced penalty; in the case of RCW 9.95.040, the prosecutor may seek to restrict parole. We do not find this discretion to be unconstitutional.

Defendants' argument was analyzed and rejected by the Court of Appeals in *State v. Edwards,* 17 Wn. App. 355, 563 P.2d 212 (1977). Relying on *Jansen v. Morris,* 87 Wn.2d 258, 551 P.2d 743 (1976), the court reasoned that statutes allowing varying punishments for the same crime

classification do not violate equal protection. Varying punishments for the same crime may rest upon rational distinctions between motives and methods of commission.

We agree with the court in *State v. Edwards*. Unlike the cases cited by defendants here, this is not a situation where the State may prosecute under different statues defining different *classes* of crime for the same criminal acts. *See State v. Ensminger*, 77 Wn.2d 535, 463 P.2d 612 (1970); *Olsen v. Delmore*, 48 Wn.2d 545, 295 P.2d 324 (1956). Rather, where the particular circumstances of the case merit, the State may seek to restrict an individual's parole possibilities, or enhance a penalty not already increased by statute. Where such selective enforcement of criminal statutes is not arbitrary, capricious or based on unjustifiable standards it does not deny equal protection. *State v. Lee*, 87 Wn.2d 932, 558 P.2d 236 (1976).

We affirm the orders granting new trials. Under these circumstances the dismissal of the special verdict in State v. Hughes was not prejudicial error. We note, however, that dismissal of a special verdict on the question whether a defendant was armed with a deadly weapon under RCW 9.95.040, where it is supported by the evidence, is ordinarily impermissible. *State v. Thompson*, 88 Wn.2d 60, 558 P.2d 245 (1977). If a new trial were not granted, the special verdict could not have been dismissed under the facts of this case.

In conclusion, we affirm the orders below for new trials. Although defendant Workman did not seek an instruction on the lesser included offense of unlawfully carrying a weapon, substantial justice in this consolidated appeal requires that he, too, be granted a new trial on this ground. At the new trial the defendants will not be entitled to their previously proposed instruction on the defense of abandonment, but the trial court may instruct the jury regarding the crime of attempt as discussed in section II of this opinion. In neither case may the State seek to invoke the provisions of RCW 9.41.025(1), enhancing the penalty already

provided by the robbery statute. The State may, however, invoke the provisions of RCW 9.95.040 regarding restriction of parole rights.

It is so ordered.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied November 20, 1978.