[No. 32426-8-I.    Division One.    August 15, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT DIRK HURCHALLA, *Appellant*.

*Miriam F. Schwartz* of *The Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Kristin Richardson, Deputy,* for respondent.

AGID, J. — After a jury trial, Robert Hurchalla was convicted of second degree assault with a deadly weapon and of a deadly weapon enhancement. He appeals, contending that the trial court erroneously refused to instruct the jury on the lesser included offense of unlawful display of a firearm. We conclude that, under *State v. Davis,* 121 Wn.2d 1, 846 P.2d 527 (1993), unlawful display of a firearm cannot be a lesser included offense of second degree assault with a deadly weapon, and that the trial court properly refused the proposed instruction.

# I

## Facts

One evening after work, Nick Corniel stopped at Blarney's Tavern where he had some beer and soda and played pool. Later, a friend arrived and asked Corniel to go for a ride to hear the new stereo in his pickup truck. They drove around the block, then returned to the parking lot of the strip mall where Blarney's is located. The friend stopped in the driveway and Corniel got out. Corniel then turned and reached back into the cab in order to get some money his friend had agreed to loan him.

About this time, Toni Dunham and Robert Hurchalla arrived at the strip mall to have dinner at a Chinese restaurant located two doors away from Blarney's. Dunham turned her car into the parking lot, but Corniel's friend's pickup was blocking the driveway. Dunham honked the horn twice and yelled out the window. The pickup did not move. Dunham and Hurchalla did not know if the pickup was broken down or stuck, so Hurchalla got out of the car and approached the pickup. Because he thought Corniel had "a weird expression" on his face, Hurchalla put his gun into the back of his pants before he got out of the car.

Hurchalla and Corniel recall different versions of what happened next. Hurchalla testified that Corniel started walking toward him. Hurchalla yelled, "what the heck is going on, are you guys going to move this truck or what". In response, Corniel laughed, got "a real belligerent look" on his face, and shoved Hurchalla. Hurchalla became frightened because he did not expect to be pushed and Corniel is physically larger and "had quite a mean look on his face". Hurchalla pulled out his gun and touched it to Corniel's face. Corniel tried to grab the gun, a scuffle ensued, and Hurchalla again pointed the gun at Corniel. Corniel backed away and the pickup moved. Dunham and Hurchalla then found a parking space and went into the restaurant to have dinner. At trial, Dunham corroborated Hurchalla's version of events, although she testified that she did not see all of the

scuffle after the initial shove because Hurchalla's body blocked her view.

Corniel testified that while he was reaching into the cab, Hurchalla had come up behind him, pushed something into his neck, and said, "get the fuck out of the way". Corniel thought the object on his neck was a fist, so he grabbed it and shoved it backward. When Hurchalla fell backward, Corniel saw Hurchalla point a gun at him. Corniel backed off, closed the door of the pickup, and the pickup drove off. Corniel then went back to Blarney's, where the bartender called the police. Corniel denied making any threatening gestures toward Hurchalla. John Sakariassen, an off-duty bartender at Blarney's, was standing in the parking lot that evening and saw the events. At trial, he corroborated Corniel's testimony that there was no physical confrontation until Hurchalla pulled out his gun. The owner of the pickup did not testify.

When the police arrived at the restaurant, they noticed a handgun on the seat next to Hurchalla. The gun was loaded, there was a round in the chamber, and the safety was off. Hurchalla was arrested and charged with second degree assault. The information was later amended to include a deadly weapon allegation.

At trial, the defense presented as an expert witness a clinical psychologist who testified that Hurchalla suffers from posttraumatic stress disorder (PTSD) and alcohol dependency related to his service in Vietnam. The psychologist testified that PTSD reduced the probability that Hurchalla would form the intent to assault because he pulled his gun as an automatic response to a perceived danger. The psychologist also testified that Hurchalla did not tell him about the second time he pointed the gun at Corniel, after the scuffle, but he speculated that Hurchalla's response was still automatic and without cognitive judgment.

Hurchalla requested and received instructions on both diminished capacity and self-defense. The trial court refused to give Hurchalla's requested instruction on the lesser included offense of unlawful display of a weapon. The jury

found Hurchalla guilty as charged, and the trial court gave him an exceptional sentence below the standard range. He now appeals the trial court's refusal to give his proposed instruction on the lesser included offense.

## II

### DISCUSSION

A defendant is entitled to an instruction on a lesser included offense if (1) each element of the lesser offense is a necessary element of the charged offense, and (2) the evidence in the case supports an inference that the lesser offense was committed. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). Hurchalla was charged with second degree assault pursuant to RCW 9A.36.021(1)(c), which provides:

> A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
>
> . . . .
>
> (c) Assaults another with a deadly weapon[.]

He requested an instruction on unlawful display of a weapon, RCW 9.41.270. That statute provides:

> (1) It shall be unlawful for anyone to carry, exhibit, display or draw any firearm . . . in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.
>
> . . . .
>
> (3) Subsection (1) of this section shall not apply to or affect the following:
>
> . . . .
>
> (c) Any person acting for the purpose of protecting himself against the use of presently threatened unlawful force by another . . ..

Hurchalla's proposed instruction on the lesser included offense incorporated both means of committing unlawful display of a weapon, *i.e.*, "manifests an intent to intimidate" another and "warrants alarm for the safety of other[s]".

We hold, in light of *State v. Davis*, 121 Wn.2d 1, 846 P.2d 527 (1993), that unlawful display of a firearm is not a lesser included offense of second degree assault. Thus, Hurchalla

cannot satisfy the first *Workman* prong. In *Davis*, the court relied on its rationale in *State v. Curran*, 116 Wn.2d 174, 804 P.2d 558 (1991), to hold that manslaughter is not a lesser included offense of second degree felony murder. In *Curran*, it held that reckless driving was not a lesser included offense of vehicular homicide. In both cases, the court reasoned that, because there exist alternate means of committing the charged crimes, every element of the proposed lesser offenses was not a necessary element of the greater offenses.

██ In neither *Davis* nor *Curran* did the court limit its analysis to the means by which the State alleged the defendant actually committed the crime. Read literally, the holdings in both cases stand for the proposition that, regardless of the means specifically charged, if alternate means of committing a crime exist and the lesser included offense does not have to be committed to commit the crime by *all* of those alternate means, there cannot be a lesser included offense. There are numerous alternate means by which a defendant can commit second degree assault, RCW 9A.36.021(1)(a)-(g), only one of which includes the same elements as unlawful display of a firearm. Thus, we are constrained to conclude that unlawful display of a firearm is not a lesser included offense of second degree assault.

In *Seattle v. Wilkins*, 72 Wn. App. 753, 757 n.6, 865 P.2d 580 (1994), a panel of this court expressed disagreement with *Davis*, stating that "[w]e feel *Davis* goes too far" since "[i]t implies that anytime an offense can be committed by inconsistent alternative means, that offense cannot have a lesser included offense." Under the interpretation of *Davis* urged in *Wilkins*, the legal prong would be met in this case because the elements of unlawful display of a firearm are elements of the particular means of committing assault — with a deadly weapon — charged. While we agree with the *Wilkins* panel that potential lesser included offenses should be based on the means charged rather than on uncharged, theoretical alternative means, we cannot find that distinction in either *Curran* or *Davis*. We therefore conclude that

Hurchalla was not entitled to the requested lesser included offense instruction under the legal prong of the *Workman* analysis.

■ Nor can Hurchalla satisfy the factual prong of the *Workman* test. Before a lesser included offense instruction will be given, the defense must present evidence which affirmatively establishes that the lesser included offense was committed. It is not sufficient that the jury might simply disbelieve the State's evidence supporting the charged crime. *State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990), *disapproved on other grounds by State v. Blair*, 117 Wn.2d 479, 487, 816 P.2d 718 (1991). In other words, the evidence must support " '. . . an inference that *only* the "lesser" offense was committed.' " *State v. Peters*, 47 Wn. App. 854, 860, 737 P.2d 693 (quoting *State v. Putnam*, 31 Wn. App. 156, 163, 639 P.2d 858, *review denied*, 97 Wn.2d 1018 (1982)), *review denied*, 108 Wn.2d 1032 (1987).

At trial, Hurchalla admitted to pointing his gun at Corniel. His expert witness testified that, as a result of PTSD, this behavior was a reflex action and not intentional. Hurchalla contends that this evidence entitled him to an instruction on the lesser included offense of unlawful display of a weapon because it supports an inference that he could not form the intent to commit second degree assault. Therefore, he argues, he presented evidence that he committed only the lesser offense.

■ This argument is correct as far as it goes. However, it ignores the impact of his claim of self-defense on the inferences that could be drawn from his evidence. Hurchalla relied on the expert's testimony to argue self-defense, and the trial court gave his proposed instruction on this theory. If the jury believed this defense, neither second degree assault nor either means of committing unlawful display could be established because self-defense is an absolute defense to both crimes. RCW 9A.16.020; *State v. Rodrigues*, 21 Wn.2d 667, 668, 152 P.2d 970 (1944). Under the self-defense theory, the jury would have had to either convict Hurchalla as charged or find him not guilty of any offense.

Thus, the trial court correctly refused to give Hurchalla's proposed instruction on the lesser included offense because a complete defense negates the required inference that only the lesser included offense was committed.[1]

Affirmed.

WEBSTER, C.J., and COLEMAN, J., concur.

Review granted at 125 Wn.2d 1020 (1995).

---

[1]The cases on which Hurchalla relies are inapposite. In neither *Workman,* 90 Wn.2d at 448-49, nor *State v. Hummell,* 68 Wn. App. 538, 541-42, 843 P.2d 1125 (1993) did the defense present a theory that was inconsistent with its position that the defendant committed the lesser included offense instead of the greater charged offense. Similarly, *State v. Karp,* 69 Wn. App. 369, 376, 848 P.2d 1304, *review denied,* 122 Wn.2d 1005 (1993) is not on point. As we noted above, the evidence that his actions were not intentional is negated by his reliance on a self-defense claim.