912 P.2d 483 (1996)
128 Wash.2d 727
The STATE of Washington, Respondent,
v.
Sean LUCKY, Appellant.
No. 62930-7.
Supreme Court of Washington, En Banc.
March 7, 1996.
Reconsideration Denied April 15, 1996.
Richard Tassano, David Donnan, Seattle, for appellant.
Norm Maleng, King County Prosecutor, Henry Corscadden, III, Deputy, Theresa Fricke, Deputy, Lee Yates, Deputy, Seattle, for respondent.
ALEXANDER, Justice.
We are asked to decide whether the trial court erred in declining to instruct the jury that the crime of unlawful display of a weapon is a lesser included offense of assault in the second degree, when the thrust of the State's case was that the Defendant committed the species of second degree assault commonly referred to as assault with a deadly weapon. See RCW 9A.36.021(1)(c). We affirm the trial court, reaffirming the rule we articulated in State v. Davis, 121 Wash.2d 1, 4, 846 P.2d 527 (1993) and State v. Curran, 116 Wash.2d 174, 183, 804 P.2d 558 (1991).
Late in the evening of January 22, 1994, Sean Lucky stopped at a restaurant on the shores of Lake Union in Seattle. A short while later, an employee of the restaurant, Shon Powell, saw Lucky carrying an alcoholic beverage in an area of the restaurant where alcohol was not permitted to be carried. When Powell informed Lucky that he could not carry the beverage in that part of the facility, Lucky responded by acting in a generally obnoxious manner. Eventually, after Lucky argued with the restaurant manager, the manager asked Powell to "get him [Lucky] out of here." Report of Proceedings at 83. Powell consequently proceeded to physically remove Lucky from the building. He was assisted in this effort by a patron of the restaurant, John Gilday, who held the restaurant's main doors open as Powell escorted Lucky out of the building. Once outside, Powell released Lucky. Immediately thereafter, Gilday and Powell noticed that Lucky had a gun in his right hand. A brief scuffle ensued, during which Gilday and Powell *484 subdued Lucky and took the gun from him. No shots were fired.
A City of Seattle police officer was summoned and arrived at the scene of the incident soon after Lucky was subdued. Gilday directed the officer to the handgun that Powell and Gilday had taken from Lucky. It was later found to be loaded with a full complement of 15 rounds and fully operational as a semi-automatic weapon.
Lucky was subsequently charged by information in King County Superior Court with:
the crime of Assault in the Second Degree, committed as follows:
That the defendant SEAN HARDY LUCKY in King County, Washington during a period of time intervening between January 22, 1994 through January 23, 1994, did assault Shon T. Powell with a deadly weapon, to-wit: a 9-millimeter handgun;
Contrary to RCW 9A.36.021(1)(c), and against the peace and dignity of the State of Washington.
Am. Information, Clerk's Papers at 7.[1] The information also contained a special allegation that Lucky was armed with a deadly weapon during the commission of the charged offense. See RCW 9.94A.125.
Powell, Gilday, and Lucky testified at the ensuing jury trial. Powell said that after he initially released Lucky outside of the restaurant, he noticed that Lucky had a gun in his right hand. Powell said that Lucky then raised the gun, aiming it at Powell's stomach. Powell indicated that he then slapped the gun so that it pointed downward, and swiveled Lucky around to gain a position behind him. Powell also testified that, after slapping the gun, he "saw a second pair of hands come and grab the gun." Report of Proceedings at 87.
The second set of hands that Powell observed belonged to Gilday, who testified that as Powell and Lucky were exiting together through the restaurant's double doors, he saw Lucky use his right hand to take hold of a gun from beneath his overcoat. Gilday said that he then grabbed Lucky's forearm with both hands and continued to hold Lucky's wrist until Lucky was thrown to the ground by Powell, because the gun "was pointed at ... us [Powell and Gilday] through [Lucky's] body." Report of Proceedings at 44.
Lucky testified that he had a permit to carry a concealed weapon, and that he did not point the gun at anyone. He said that the handgun, which he claimed he was carrying for personal protection, shook loose when Powell initially grabbed him and spun him around. He said that he "didn't want it [the handgun] to fall out in the middle of the lobby, so [he] grabbed it ... held it down [and] tried to put it in [his] coat pocket." Report of Proceedings at 109.
Lucky's trial counsel sought a jury instruction from the trial court to the effect that the offense of unlawful display of a weapon is a lesser included offense of assault in the second degree.[2] The trial court refused to give the requested instruction.
The jury subsequently returned a guilty verdict on the charge of assault in the second degree. In response to a special interrogatory, it found that Lucky was armed with a deadly weapon at the time of the commission *485 of the assault. Lucky appealed his conviction to the Court of Appeals, Division One, which certified the case to this court pursuant to the provisions of RCW 2.06.030(d). We accepted review.
Lucky contends that the trial court abused its discretion in declining to give the requested lesser included offense instruction. A trial court's refusal to give a requested instruction, when based on the facts of the case, is a matter of discretion and will not be disturbed on review except upon a clear showing of abuse of discretion. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). See Grant v. Huschke, 70 Wash. 174, 177, 126 P. 416 (1912), overruled on other grounds by Larson v. City of Seattle, 25 Wash.2d 291, 171 P.2d 212 (1946). When, as here, a trial court's decision regarding a jury instruction is "predicated upon rulings as to the law," however, it is reviewed de novo for error of law. Braden v. Rees, 5 Wash.App. 106, 110, 485 P.2d 995 (quoting Johnson v. Howard, 45 Wash.2d 433, 436, 275 P.2d 736 (1954) (citing Huschke, 70 Wash. 174, 126 P. 416)), review denied, 79 Wash.2d 1009 (1971).
A defendant has a right to be informed of the nature of the offense against which he or she must be prepared to defend at trial. See Const. art. I, § 22 (amend. 10). As a general rule, therefore, a defendant can be convicted of only those crimes of which he or she is charged in the information. State v. Irizarry, 111 Wash.2d 591, 592, 763 P.2d 432 (1988). Two statutory provisions expand upon that rule, and provide that, in addition to the charge specified in the information, a defendant may also be convicted of certain, related crimes. First, a defendant may be convicted of an offense that is a crime of an inferior degree to the charged offense. RCW 10.61.003. Second, "[i]n all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he is charged in the indictment or information." RCW 10.61.006.
Lucky relies solely on the provisions of RCW 10.61.006 in contending that unlawful display of a weapon is a lesser included offense of assault in the second degree. This court interpreted that statute in State v. Workman, 90 Wash.2d 443, 584 P.2d 382 (1978), and concluded that:
a defendant is entitled to an instruction on a lesser included offense if two conditions are met. First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed.
Workman, 90 Wash.2d at 447-48, 584 P.2d 382 (citations omitted); accord State v. Charles, 126 Wash.2d 353, 355, 894 P.2d 558 (1995); State v. Davis, 121 Wash.2d 1, 4, 846 P.2d 527 (1993); State v. Curran, 116 Wash.2d 174, 183, 804 P.2d 558 (1991). We refer to the first condition as the "legal prong" of the Workman test, and the second condition as the "factual prong."
When this court has applied the test that we pronounced in Workman, we have indicated that a defendant "would be entitled to a jury instruction under existing Washington law on [a lesser included offense] only if the [greater crime] could not be committed without also committing the [lesser offense]." Curran, 116 Wash.2d at 183, 804 P.2d 558. The Court of Appeals, Division One, has accurately paraphrased the Curran articulation of the Workman test in this manner: "where there are numerous ways of committing the greater crime charged, and the crime can be committed by one but not another of the alternative means, then any lesser included offense must be a lesser included offense of all the means." City of Seattle v. Wilkins, 72 Wash.App. 753, 757, 865 P.2d 580 (1994). More recently, another panel of that division of the Court of Appeals, relying on the Curran decision, stated the rule even more succinctly, as follows: "if alternate means of committing a crime exist and the lesser included offense does not have to be committed to commit the crime by all of those alternate means, there cannot be a lesser included offense." State v. Hurchalla, 75 Wash.App. 417, 422, 877 P.2d 1293 (1994). See also State v. Ferguson, 76 Wash.App. 560, 570, 886 P.2d 1164 (1995).
Lucky asserts that the legal prong of the Workman test is met because each element *486 of unlawful display of a weapon is a necessary element of RCW 9A.36.021(1)(c), the specific section of the second degree assault statute with which we are here concerned. In support of that assertion, he argues that under the facts of this case, and as specifically charged in the information, he could not have assaulted Powell with a deadly weapon, the greater offense, without also displaying a weapon in a manner that warranted alarm for the safety of other persons. The State responds that while Lucky's assertion may be valid under these facts, it is nevertheless possible to commit an assault in the second degree, as defined in RCW 9A.36.021, without displaying a dangerous weapon.[3] It reasons, therefore, that the legal prong of the Workman test is not met.
The State has the better of the argument because the position it advances is consistent with Curran and Davis. In Curran, for example, this court applied the legal prong of the Workman test to the crime of vehicular homicide, RCW 46.61.520,[4] and the allegedly lesser included offense of reckless driving, RCW 46.61.500. We reasoned there that an instruction on reckless driving would be required "only if the crime of vehicular homicide could not be committed without also committing the crime of reckless driving." Curran, 116 Wash.2d at 183, 804 P.2d 558. Because we observed that it is possible to commit vehicular homicide not only by driving in a reckless manner, but also by driving while under the influence of intoxicating liquor or with disregard for the safety of others, we concluded that reckless driving is not a lesser included offense of vehicular homicide. Curran, 116 Wash.2d at 183, 804 P.2d 558.
Similarly, in Davis, the defendant asserted that first and second degree manslaughter are lesser included offenses of second degree felony murder. Davis, 121 Wash.2d 1, 846 P.2d 527. We noted that because "the commission of any felony supports a felony murder conviction.... there are numerous alternative ways of committing this offense," and concluded, consistent with Curran, that "there are no lesser included offenses to second degree felony murder." Davis, 121 Wash.2d at 6, 846 P.2d 527. We went on to explain that:
As the State points out, "[t]he reasoning enunciated in Curran is even more compelling here because felony murder not only includes differing means of committing the offense but actually lists a wide variety of differing crimes which come under its ambit." Petition for Review, at 8. Davis offers no rationale for abandoning the recent Curran decision, and we decline to do so.
Davis, 121 Wash.2d at 6, 846 P.2d 527.
In both Curran and Davis, this court examined the elements of the pertinent charged offenses as they appeared in the context of the broad statutory perspective, and not in the more narrow perspective of the offenses as prosecuted. Lucky suggests that we interpret these decisions narrowly, a view with which the dissent agrees, and one which the Court of Appeals has, in recent opinions, encouraged us to adopt. See Wilkins, 72 Wash.App. at 757 n. 6, 865 P.2d 580; Hurchalla, 75 Wash.App. at 422, 877 P.2d 1293; Ferguson, 76 Wash.App. at 570, 886 P.2d 1164. Such a position is logically defensible, and we are aware that some of our sister states have adopted this view. See, e.g., State v. Jeffries, 430 N.W.2d 728, 730-31 (Iowa 1988). See, also Comment, Jury Instructions on Lesser Included Offenses, 57 Nw.U.L.Rev. 62 (1962). Indeed, as the dissent correctly observes, the Workman decision is consistent with that position *487 because the court in that case examined the elements of the offenses charged as they appeared in the context of the offense as prosecuted, and not in the broader statutory perspective.
The difficulty with the position taken by the dissent, however, is that Curran and Davis clearly reject that view and have established a new rule. While the dissent identifies legitimate policy implications that weigh in favor of the rule employed in Workman, it is clear that it has been replaced with the rule established in Curran and Davis. The dissent and Lucky fail to convince us that the new rule established in those cases is either incorrect or harmful. See In re Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970) ("The doctrine [of stare decisis] requires a clear showing that an established rule is incorrect and harmful before it is abandoned."). We continue, therefore, to adhere to the rule we set forth in Curran and Davis: if, when viewed from a perspective where only the statutory elements are considered, it is possible to commit the "greater offense" without necessarily committing the purported lesser offense, an instruction on the lesser offense is not warranted. The logical consequence of this rule is that whenever there are alternative means of committing a "greater" crime, there can be no lesser included offense unless the alternative means each overlap to the extent that they are not mutually exclusive. Such is not the case here. The trial court, therefore, did not err in refusing to give Lucky's requested instruction.
Because this appeal is resolved by the above discussion, we need not address the State's argument that Lucky also failed to satisfy the factual prong of the Workman test.
Affirmed.
DURHAM, C.J., and DOLLIVER, SMITH, GUY and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.
SANDERS, J., did not participate.
JOHNSON, Justice (dissenting).
The majority misreads State v. Curran, 116 Wash.2d 174, 804 P.2d 558 (1991) and State v. Davis, 121 Wash.2d 1, 846 P.2d 527 (1993), reaching a result neither anticipated nor intended by State v. Workman, 90 Wash.2d 443, 584 P.2d 382 (1978) and illogical under RCW 10.61.006. I dissent because the majority goes far beyond what our cases and the statute say, and limits, if not eliminates, the availability of lesser included instructions.
Broadly read, Davis states that a party is not entitled to an instruction on a lesser included offense unless the lesser offense is included in every alternative means of committing the charged offense:
Under this felony murder statute, the commission of any felony supports a felony murder conviction. Thus, there are numerous alternative ways of committing this offense apart from assault. Given the wide breadth of alternatives, there are no lesser included offenses to second degree felony murder.
Davis, 121 Wash.2d at 6, 846 P.2d 527.
Davis should not be interpreted so broadly. The majority's interpretation of Davis severely restricts the utility of RCW 10.61.006, which is one of our oldest criminal statutes, virtually unchanged since the first criminal code adopted in Washington Territory. Laws of 1854, § 123, p. 120. RCW 10.61.006 is a logical and fair rule, which can be used either by the prosecution or by the defense. The statute is severely limited under the majority's formulation of Davis by virtue of the fact the Legislature has added alternative means of committing almost every offense. A lesser offense will seldom satisfy every alternative means of committing the greater. Under the majority's reading, the statute has no practical meaning and no practical application.[1] The test we recognized and applied in Workman, properly applied, gives meaning to the statute.
Although Davis purports to follow Workman, the majority's interpretation of Davis *488 is inconsistent with the result in Workman. Workman was convicted of attempted first degree robbery while armed with a deadly weapon. In Workman, we found the trial court had erred in failing to instruct the jury on the included offense of carrying a weapon. Workman, 90 Wash.2d at 447, 584 P.2d 382. In doing so, we looked to "[t]he elements of the crime in the context of this case" and decided that carrying a weapon "is a necessary element of the greater crime of first-degree robbery." Workman, 90 Wash.2d at 447-48, 584 P.2d 382 (emphasis added). However, looking at the statute at issue in Workman, the use of a deadly weapon in the commission of a robbery is just one of several ways to commit first degree robbery, not all of which require the defendant to use or possess a deadly weapon. Under the Davis and majority's interpretation, Workman was incorrectly decided because in that case the lesser offense was not included in every alternative way of committing the charged offense. Thus, although the majority purports to apply the test we articulated in Workman, its application of the legal prong of the test in Curran and Davis effectively and unnecessarily overrules the result we reached in Workman.
Neither the facts of Davis nor its predecessor Curran require such a broad interpretation. The defendant in Curran was charged with two of the three ways of committing vehicular homicide, but not the third alternative, reckless driving. Curran, 116 Wash.2d at 183, 804 P.2d 558. We held that the crime of reckless driving was not included in the crime charged against Curran because reckless driving is not a lesser included offense of driving with disregard for the safety of others. Curran, 116 Wash.2d at 183, 804 P.2d 558. We cited State v. Eike, 72 Wash.2d 760, 765, 435 P.2d 680 (1967), which held that driving with disregard for the safety of others is a form of culpability "falling short of recklessness." It would make no sense to say that an offense requiring greater culpabilityrecklessnesscould be considered a "lesser," or an "included" offense of driving with disregard for the safety of others.
In Davis, the defendant was charged with felony murder for killing in the course of a second degree assault. The defendant asked for an instruction on manslaughter, arguing that manslaughter is a lesser included offense of felony murder. Davis, 121 Wash.2d at 4, 846 P.2d 527. We rejected Davis' argument, giving at least three reasons. First, we interpreted Curran to mean that, "a lesser included offense instruction is not available whenever alternative means exist for committing the crime charged," and pointed out that felony murder can be committed by any number of alternative felonies. Davis, 121 Wash.2d. at 5-6, 846 P.2d 527. Second, we pointed out that no mental element is necessary to commit felony murder, while manslaughter requires recklessness or criminal negligence. Davis, 121 Wash.2d at 7, 846 P.2d 527. This second holding is completely consistent with Curran, which also declined to find that a crime requiring a more culpable mental state is a lesser included offense. Third, we recognized even if defendant Davis had only committed third degree assault, that crime would supply the predicate offense for felony murder, and the defendant would still be guilty of the greater offense. Davis, 121 Wash.2d at 7 n. 5, 846 P.2d 527. Both Curran and Davis were correctly decided on the grounds a crime requiring a more culpable mental state is not a lesser offense. The majority's approach extends Curran and Davis far beyond what is necessary under their facts, eroding the principles we adopted in Workman.
The logical approach under Workman and RCW 10.61.006 requires the court to look to the actual offense charged when deciding whether a party is entitled to a lesser included offense instruction. Only by following this interpretation can we harmonize our cases and assure the State and the defendant will be able to argue their theory of the case.
In this case, because each element of unlawful display of a weapon is a necessary element of assault in the second degree, Mr. Lucky was entitled to a lesser included instruction under the legal prong of Workman.
MADSEN, J., concurs.
NOTES
[1] RCW 9A.36.021(1) reads, in relevant part, as follows:

"A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
". . . .
"(c) Assaults another with a deadly weapon."
A "deadly weapon" is defined, in part, as "any... loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, ... which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6).
[2] RCW 9.41.270(1) defines the crime of unlawful display of a weapon as follows:

"It shall be unlawful for any person to carry, exhibit, display, or draw any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons."
[3] In this regard, the State relies on Hurchalla, 75 Wash.App. at 422, 877 P.2d 1293, in which the Court of Appeals, Division One observed that "[t]here are numerous alternate means by which a defendant can commit second degree assault, RCW 9A.36.021(1)(a)-(g), only one of which includes the same elements as unlawful display of a [weapon]." For example, subsection (a) of that statute provides that one who "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm" is also guilty of second degree assault, whether a deadly weapon is involved or not.
[4] The elements of vehicular homicide are (1) the death of a person (2) proximately caused by a driver who either (a) was under the influence of intoxicating liquor or (b) drove in a reckless manner or (c) drove with disregard for the safety of others.
[1] Defendants feel the majority's narrow rule most severely. By making the initial charging decision and utilizing the liberal amendment rules, the State has the ready ability to alter its theory of the case to meet the evidence. Without the benefit of lesser included instructions, the defense's ability to argue its theory of the case is severely limited, especially in cases where the defendant concedes he or she has committed some crime, but not as great as the one charged.