

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67709-8-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| GLENN TYLER SMITH, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: <u>March 4, 2013</u> |
|  | ) |  |

Cox, J. — Glenn Smith appeals his conviction for second degree burglary. He claims the trial court erroneously refused to provide a lesser included instruction of third degree theft. He also argues that there was insufficient evidence to convict him of second degree burglary. We disagree with both claims and affirm.

In 2007, Smith was caught shoplifting from a Wal-Mart store in Everett. A Wal-Mart employee testified that she verbally told Smith that he was "trespassed" or restricted from entering any Wal-Mart for his lifetime after this incident.

In 2011, Smith was again caught shoplifting from the same Wal-Mart. The State charged Smith with one count of second degree burglary.

At Smith's jury trial, he requested that third degree theft be included as a lesser included offense instruction. The trial court denied Smith's request on the basis that third degree theft is not a lesser included offense of second degree burglary.

The jury found Smith guilty of second degree burglary.

Smith appeals.

## LESSER INCLUDED OFFENSE INSTRUCTION

Smith argues that his conviction for second degree burglary must be reversed because he was entitled to a lesser instruction for third degree theft that the trial court declined to give. We disagree.

In Washington, the right to a lesser included offense instruction is statutory.[1] A defendant is entitled to an instruction of a lesser included offense if the two prongs of the State v. Workman[2] test are met. Under the legal prong, each element of the lesser offense must be a necessary element of the charged offense.[3] Under the factual prong, the evidence presented in the case must support an inference that the lesser crime was committed.[4] "'Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime.'"[5]

---

[1] RCW 10.61.006 ("In all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he or she is charged in the indictment or information.").

[2] 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

[3] State v. Berlin, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997) (citing Workman, 90 Wn.2d at 447-48).

[4] Id.

[5] Id. at 546 n.1 (quoting State v. Frazier, 99 Wn.2d 180, 191, 661 P.2d 126 (1983)).

Because the trial court rejected Smith's proposed instruction on the basis that third degree theft is not a lesser included offense of second degree burglary, we review the claimed legal error de novo.[6]

The elements of second degree burglary are (1) entering or remaining unlawfully in a building other than a vehicle or dwelling, and (2) so doing with intent to commit a crime against a person or property therein.[7] The elements of third degree theft are (1) the commission of a theft of (2) property or services not exceeding $750 in value.[8]

Here, the State charged Smith with second degree burglary. Because none of the elements of third degree theft are necessary elements of second degree burglary, the trial court properly denied Smith's request for a lesser included instruction.

Smith argues that he was entitled to the third degree theft instruction because the second degree burglary charge was premised upon Smith's intent to commit a "theft." Though the information[9] and the to-convict instruction,[10]

---

[6] State v. Walker, 136 Wn.2d 767, 772, 966 P.2d 883 (1998).

[7] RCW 9A.52.030(1); see State v. Brunson, 128 Wn.2d 98, 104-05, 905 P.2d 346 (1995).

[8] RCW 9A.56.050(1); see also RCW 9A.56.020(1) (defining theft).

[9] See Clerk's Papers at 69 (emphasis added) (stating in the information that "the defendant, on or about the 31st day of May, 2011, with intent to commit a crime of *theft* against a person or property therein").

[10] See Clerk's Papers at 34 (emphasis added) (stating in the to-convict instruction "that the entering or remaining was with intent to commit a crime of *theft* against a person or property therein").

3

specified that the crime Smith intended to commit was "theft," this argument is not persuasive for two reasons.

First, Smith cites State v. Berlin[11] to support his argument that the legal prong of the Workman test turns on how an offense is charged and prosecuted, not as it broadly appears in a statute. While this is a correct statement of law, Berlin addressed a different issue than the issue in this case.

In Berlin, the supreme court overruled State v. Lucky, which held that under the legal prong of the Workman test, a reviewing court must look at "'the elements of the pertinent charged offenses as they appeared in the context of the broad statutory perspective, and not in the more narrow perspective of the offenses as prosecuted.'"[12] In Lucky, the State charged Lucky with second degree assault committed with a deadly weapon under RCW 9A.36.021(1). Lucky requested a jury instruction for the offense of unlawful display of a weapon under RCW 9.41.270(1).[13] The State argued, and the supreme court agreed, that unlawful display of a weapon was not a lesser included offense "because it is possible to commit second degree assault, under RCW 9A.36.021, without displaying a deadly weapon."[14]

---

[11] 133 Wn.2d 541, 947 P.2d 700 (1997), overruling State v. Lucky, 128 Wn.2d 727, 912 P.2d 483 (1996).

[12] 133 Wn.2d at 547 (quoting Lucky, 128 Wn.2d at 734).

[13] Id.

[14] Id.

But in <u>Berlin</u> the supreme court overruled <u>Lucky</u> partly because it would "preclude[ ] a lesser included offense instruction whenever a crime may be statutorily committed by alternative means."[15] "A lesser offense will seldom satisfy every statutory alternative means of committing the greater offense."[16] Instead, the court held:

> A lesser included offense instruction is available to both the prosecution and the defense, the constitutional requirement of notice is incorporated into the <u>Workman</u> test, and the test allows both parties to effectively argue their theory of the case. Only when the lesser included offense analysis is applied to the offenses *as charged and prosecuted*, rather than to the offenses as they broadly appear in statute, can both the requirements of constitutional notice and the ability to argue a theory of the case be met. This is fair to both the prosecution and the defense.[17]

Here, the State charged and prosecuted Smith with second degree burglary under RCW 9A.52.030. As discussed above, this crime has two elements: (1) entering or remaining unlawfully in a building other than a vehicle or dwelling, and (2) so doing with intent to commit a crime against a person or property therein.[18] RCW 9A.52.030 does not provide alternative means of committing this offense. Thus, the <u>Berlin</u> court's concerns that it had with the rule in <u>Lucky</u> are not present in this case, and the holding in <u>Berlin</u> does not extend to this case.

---

[15] <u>Id.</u> at 548.

[16] <u>Id.</u>

[17] <u>Id.</u> (emphasis added).

[18] RCW 9A.52.030(1); <u>see</u> <u>Brunson</u>, 128 Wn.2d at 104-05.

Second, the supreme court has held that "[t]he intent to commit a specific named crime inside the burglarized premises is not an 'element' of the crime of burglary in the State of Washington."[19] In State v. Bergeron, our supreme court rejected a burglary defendant's argument that the information in his case was defective because it did not specify the crime he intended to commit inside the premises.[20] Based on the history and text of the burglary statute, the court held that "the specific crime or crimes intended to be committed inside burglarized premises is *not* an element of burglary that must be included in the information, jury instructions or in the trial court's findings and conclusions."[21]

Although Bergeron addressed whether an information was defective, the holding is still helpful here. Since the specific crime that a person intended to commit is not an element of second degree burglary, it follows that actually naming a specific crime does not change the elements of second degree burglary.

The fact that the State specified the crime Smith intended to commit was "theft" in the information and to-convict instruction does not change the elements of second degree burglary. Nor does it incorporate the elements of third degree theft. As the State argues, it only had to prove that Smith "intended" to commit a crime, here theft, not that a theft was actually "completed."

---

[19] State v. Bergeron, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985).

[20] Id. at 6.

[21] Id. at 16.

Because we conclude that the legal prong of the Workman test was not satisfied, we need not reach Smith's arguments regarding the factual prong. The trial court's refusal to give the third degree theft instruction does not require reversal of Smith's conviction.

## SUFFICIENCY OF THE EVIDENCE

Smith next argues that the State failed to present sufficient evidence that he unlawfully entered or remained in the Wal-Mart store. Specifically, he contends that the State failed to present sufficient evidence to show that Wal-Mart previously notified him that his entry into their stores was unlawful. We disagree.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, any rational trier of fact could have found that each element of the crime was proved beyond a reasonable doubt.[22] We draw all reasonable inferences from the evidence in the State's favor and interpret the evidence most strongly against the defendant.[23] We assume "the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[24] We defer to "the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence."[25]

---

[22] State v. Drum, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010).

[23] State v. Joy, 121 Wn.2d 333, 339, 851 P.2d 654 (1993).

[24] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[25] State v. Fiser, 99 Wn. App. 714, 719, 995 P.2d 107 (2000).

As discussed above, the elements of second degree burglary are (1) entering or remaining unlawfully in a building other than a vehicle or dwelling, and (2) so doing with intent to commit a crime against a person or property therein.[26] "A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain."[27]

"A private property owner may restrict the use of its property to those purposes for which it is lawfully dedicated so long as the restrictions are not discriminatory."[28] "The right to exclude extends even if the property is otherwise open to the public."[29] When a private property owner notifies a person that his or her license, invitation, or privilege to enter that property has been revoked, that person's presence may be unlawful for the purposes of proving the first element of second degree burglary.[30]

Here, Kristi Daggett, an "asset protection associate" for Wal-Mart, testified that she "trespassed" or revoked Smith's license, invitation, or privilege to enter any Wal-Mart for his lifetime.[31] Daggett testified that in 2007 she caught Smith

---

[26] RCW 9A.52.030(1); see Brunson, 128 Wn.2d at 104-05.

[27] RCW 9A.52.010(5).

[28] State v. Kutch, 90 Wn. App. 244, 247, 951 P.2d 1139 (1998).

[29] Id.

[30] Id. at 249.

[31] Report of Proceedings (Aug. 30, 2011) at 21, 27-28.

shoplifting.[32] After she apprehended Smith, she handcuffed him and called the

Everett Police Department.[33] She completed a "face sheet," which contained

Smith's personal information and the items that he shoplifted.[34] She also took a

photograph of him to put in Wal-Mart's files.[35] Daggett testified that she "issued"

Smith a "lifetime restriction" from Wal-Mart.[36] She did not read the "Notification of

Restriction from Property" document word-for-word but gave Smith the following

explanation:

> A.    Because he was actually handcuffed, I went through the process of explaining what it meant. I almost, with very little variation, say the same thing every time I trespass somebody. And so I will start it and I will say you're no longer welcome to Wal-Mart, any Wal-Mart anywhere in the world, the rest of your life. If you come back, you can and will be charged with criminal trespassing. If you come back and take something again, irrespective of dollar amount, they can choose to pursue burglary charges against you, making it an automatic felony.
>
> Then I ask if they understand the trespass. And often they say yes. And if they do, I will kind of reiterate the points again. Do you understand it's for life? Yes. Do you understand that it's all Wal-Marts and Wal-Mart entities, including Sam's Club and neighborhood markets? Yes. And then I tell them that it remains on file with Wal-Mart.[37]

---

[32] Id. at 24-25.

[33] Id. at 25.

[34] Id. at 26.

[35] Id. at 29.

[36] Id. at 27.

[37] Report of Proceedings (Aug. 30, 2011) at 28-29, 31.

She also testified that Smith did not sign the "Notification of Restriction from Property" form because he was handcuffed.[38]

Smith testified that he had not seen the "Notification of Restriction from Property" document until he saw it in the discovery file for his case.[39] He did not recall whether the document was read to him.[40] He testified that he did not believe that he was prohibited from entering Wal-Mart, and he had been in the store six or seven times in the "recent past" and was never approached about being there.[41] Smith also testified that he had been "trespassed" from other stores, but he did not return to those stores because he knew if he was "caught," he could face criminal charges.[42]

Deferring to the trier of fact's resolution of conflicting testimony and viewing the evidence in light most favorable to the State, this evidence was sufficient to establish that Wal-Mart notified Smith that his license, invitation, or privilege from entering the store had been revoked. Therefore, there was sufficient evidence that Smith unlawfully entered Wal-Mart.

Smith argues that there was insufficient evidence to prove that he received notice of the restriction. He cites State v. Kutch[43] and points out factual

---

[38] Id. at 31.

[39] Report of Proceedings (Aug. 30, 2011) at 84.

[40] Id. at 85.

[41] Id. at 84-85.

[42] Id. at 88.

[43] 90 Wn. App. 244, 951 P.2d 1139 (1998).

distinctions between that case and this case to argue that the evidence does not support a finding beyond a reasonable doubt that Smith received notice of the restriction. But these factual distinctions are not material.

In Kutch, Division Three of this court affirmed Robert Kutch's conviction of second degree burglary.[44] There, the Mervyn's store security guards caught Kutch shoplifting in the store.[45] At that time, Kutch signed a form that notified him that his invitation to enter the Yakima Mall was revoked for one year.[46] Kutch was not given a copy of the form.[47] The court concluded that Kutch was "sufficiently notified that he was no longer invited into the mall as a member of the general public."[48]

Here, the fact that Smith did not sign the "Notification of Restriction from Property" form and that he did not receive a copy of this form does not mean that the evidence was insufficient to establish notice. In coming to its conclusion in Kutch, Division Three explained that Kutch cited no authority that would require Kutch to receive a copy of the notice.[49] And the court noted that "[a] verbal notice might just as adequately inform him that his invitation had been

---

[44] Id. at 249-50.

[45] Id. at 246.

[46] Id.

[47] Id. at 248.

[48] Id. at 249.

[49] Id. at 248.

revoked."[50] Thus, the factual distinctions between Kutch and this case are not material, and Kutch supports Smith's conviction.

Smith also contends that the restriction notice is ambiguous as to how long it applies because the written notice "is silent as to its duration."[51] He again attempts to distinguish this case from Kutch, in which the restriction notice stated that it was applicable for one year.[52] While the written notice here did not indicate the length of the restriction, Daggett testified that she verbally told Smith that the restriction would last his lifetime. This was sufficient evidence of the length of the restriction. Smith does not cite any authority that a verbal notification of the duration of the restriction is inadequate.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

---

[50] Id.

[51] Appellant's Opening Brief at 17.

[52] Id. (citing Kutch, 90 Wn. App. at 248-49).