# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

STATE OF WASHINGTON, )   No. 32925-9-III
                     )
        Respondent,  )
                     )   ORDER GRANTING
v.                   )   MOTION FOR
                     )   RECONSIDERATION AND
DON ARTHUR MOORE,    )   WITHDRAWING OPINION
                     )
        Appellant.   )
                     )

The court has considered appellant's motion for reconsideration of our opinion filed on December 15, 2016, and is of the opinion the motion should be granted.

THEREFORE, IT IS ORDERED the motion for reconsideration is granted.

IT IS FURTHER ORDERED that the opinion filed on December 15, 2016, shall be withdrawn and a new opinion shall be filed this day.

PANEL:    Judges Lawrence-Berrey, Fearing and Korsmo

FOR THE COURT:

_George Fearing_

GEORGE FEARING
CHIEF JUDGE

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32925-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DON ARTHUR MOORE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Don Arthur Moore appeals his conviction for first degree murder and one of his sentence enhancements. He argues: (1) his right to a public trial was violated because the juror seating charts that documented venire juror strikes were not readily available to the public, (2) the trial court erred in giving a first aggressor instruction, (3) he received ineffective assistance of counsel, and (4) he was improperly sentenced to a firearm enhancement when the jury returned two deadly weapon special verdicts. Finding no error, we affirm.

## FACTS

In late December 2012, Moore asked Bruce Molony to live at his rural home near Riverside, Washington, so his personal belongings would be safe while he was out of town for an extended period. In early March 2013, Moore returned. After some time, he began to notice that items were missing from his home. Moore decided that Molony had taken the items.

On April 11, 2013, Moore went to the Okanogan County Sheriff's Office where he spoke with Deputy Dennis Irwin. Moore told Deputy Irwin that Molony had recently watched his property for a few months and when he returned he noticed that several scrap items were missing. Moore told Deputy Irwin he believed Molony had taken those items.

On April 12, Moore gave Detective Irwin additional information. The next day, Deputy Irwin told Moore he did not then have probable cause to arrest Molony for theft. Deputy Irwin also told Moore he would be out of the office for a few days, but assured Moore he would resume the investigation upon his return. Moore told Deputy Irwin he had considered confronting Molony, but Molony was armed and someone might get shot.

On April 19, Moore visited two friends, Edward McIntyre and Ronald Skogstad. McIntyre heard Moore say about Molony, I'll kill the son of a bitch. Skogstad also testified that Moore said he was going to kill Molony.

On April 20, Moore learned he was missing a clutch. He then armed himself with a gun and drove to where Molony lived. The only living witness to the events at Molony's residence is Moore.

Moore gave various statements to law enforcement. Details of his various statements were inconsistent. He also testified at trial. The statements and testimony all involved a central narrative: He intended to confront Molony about the missing clutch. But when he confronted Molony about the clutch, Molony feigned confusion and then attacked Moore with a rock or a knife. While being attacked, Moore drew his gun and shot Molony at close range several times, and then stabbed Molony several times.

But the physical evidence contradicted Moore's narrative: The physical evidence supported the State's argument that Moore killed Molony from a distance. After killing Molony, Moore got his car stuck in the driveway. After that, Moore exited his car and cut himself with his own knife to support a claim of self-defense. The physical evidence also supported the State's argument that Moore then used his own knife to stab a lifeless Molony several times, planted his knife near Molony's dead body, and planted his knife sheath in Molony's back pocket.

In addition to the physical evidence, the State also presented the jury with a recorded jail telephone call between Moore and Skogstad. In that call, Skogstad said he recalled Moore saying he was going to kill Molony. Moore, knowing the call was recorded, warned his friend to be careful what he said. Moore then claimed he had earlier said he would kill Molony *if* Molony pulled a gun first. Skogstad responded with confusion, and then said, "'You told me a couple times you were gonna off him . . . .'" Report of Proceedings (RP) at 322. Again, Moore warned his friend not to talk like that. Skogstad then responded, "'Okay. That's right. Sorry.'" RP at 323.

3

*Procedural facts*

During jury selection, one of the potential jurors said he could not serve on a capital case because he was opposed to the death penalty. The State accurately responded that this was not a capital case. Moore did not object to this response.

Counsel exercised their for-cause challenges and peremptory challenges in open court. Their challenges were memorialized on a four-page seating chart. The chart shows the venire juror names, the venire juror numbers, which venire jurors were excused or struck, and which party struck them.

During trial, Moore elicited evidence of his peaceful character through his friend Skogstad. In rebuttal to that testimony, the State asked Skogstad if Moore had ever acted violently toward him. Skogstad admitted Moore once grabbed his throat for no apparent reason. Moore did not object.

Moore proposed and received a self-defense jury instruction. The State proposed a first aggressor instruction. Mr. Moore did not object to that instruction, and the court gave it. The State also proposed and received an instruction for second degree murder. Mr. Moore did not object, nor did he request an instruction for manslaughter.

The jury instructions included one special verdict form, one for the charged deadly weapon enhancement and the other arguably for the charged firearm enhancement. The jury found Moore guilty of first degree murder, and answered "yes" on the special verdict form relative to the enhancements. Clerk's Papers (CP) at 23. Moore appealed.

4

*Additional evidence on review*

Moore's appellate counsel could not obtain a docket number for the seating chart. Moore brought a motion to add evidence to establish that the seating chart was not part of the record. The State then asked the clerk's office to look for the seating chart. Eleven days later, *but more than 12 months after trial*, the clerk's office provided a copy of the seating chart to the State, and explained the chart had been misplaced in a clerk's box, separate from other documents relating to Moore's case.

## ARGUMENT

### A. PUBLIC TRIAL

Moore contends his right to a public trial was violated. He argues the seating chart was not entered into the public record at the conclusion of the case, and recent case law mandates that these types of written documents must be available for public viewing or a new trial is required.

A criminal defendant's right to a public trial is found in article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution. Both provide a criminal defendant the right to a public trial by an impartial jury. The state constitution also provides that "[j]ustice shall be administered openly," which grants the public an interest in open, accessible proceedings, similar to rights granted in the First Amendment to the United States Constitution. WASH. CONST. art. I, § 10; *State v. Lormor*, 172 Wn.2d 85, 91, 257 P.3d 624 (2011). Whether an accused's constitutional

public trial right has been violated is a question of law that we review de novo. *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006).

It is clear that for-cause and peremptory challenges implicate the public trial right. *State v. Love*, 183 Wn.2d 598, 605, 354 P.3d 841 (2015), *cert. denied*, 136 S. Ct. 1524, 194 L. Ed. 2d 604 (2016). In *Love*, the defendant argued silent peremptory challenges, even documented by a juror strike sheet, violated his right to a public trial. In disagreeing, the *Love* court noted:

> [T]he public had ample opportunity to oversee the selection of Love's jury because no portion of the process was concealed from the public; no juror was questioned in chambers. To the contrary, observers could watch the trial judge and counsel ask questions of potential jurors, listen to the answers to those questions, see counsel exercise challenges at the bench and on paper, and ultimately evaluate the empaneled jury. *The transcript of the discussion about for cause challenges and the struck juror sheet showing the peremptory challenges are both publicly available.*

*Id.* at 607 (emphasis added). The *Love* court held that written peremptory challenges "are consistent with the public trial right so long as they are filed in the public record." *Id.*

The facts here are similar to the facts in *Love*. In both cases, no processes were concealed from the public. Observers could watch the entire process and evaluate the process from start to finish, including which venire jurors were excused, which were struck, and which were empaneled as jurors. But here, the documented record of the written peremptory challenges was not readily available to the public.

The relevant posttrial record establishes that the seating chart was not scanned into the electronic filing system for more than one year after Moore's trial. It was not until

6

Moore's counsel brought a motion to add evidence to the appellate record that the State learned of this problem. The State e-mailed the elected county clerk and asked her to look for the seating chart. Eleven days later, the elected county clerk responded to the State. In her response, she provided a copy of the seating chart to the State, and explained the chart was found in a box belonging to one of her deputy clerks, separate from documents related to Moore's case.

Because the seating chart was not scanned and made part of the clerk's file for over one year, Moore argues it was not available for public view and his right to a public trial was violated. The State, citing RCW 36.23.030, argues the seating chart is not required to be assigned a docket number, so the lack of a docket number is not determinative. The State further argues that Moore fails to show that the seating chart was not publically available.

We resolve this issue in a practical manner consistent with the purposes and practicalities of public trial rights. At all times, the public could view the jury selection process that occurred in open court. After the notations on the seating chart were made, a member of the public could have requested and would have eventually received a copy of the seating chart. Here, once tasked with looking for the seating chart, the clerk's office located it in 11 days. If public trial rights required same-day receipt of requested peremptory challenge information, a copy of peremptory challenge discussions—which might take several days to transcribe—would be insufficient to satisfy a defendant's right to a public trial. But *Love* implies that the eventual public availability of such a transcript

7

is sufficient. *Love*, 183 Wn.2d at 607. By extension, a temporarily misplaced written record of peremptory challenges does not render an open proceeding closed. In reaching this conclusion, we note that the seating chart was always in the clerk's office, albeit misplaced, and there was no court action that prevented a requesting party from obtaining a copy of the chart.

## B.     FIRST AGGRESSOR INSTRUCTION

Moore argues the trial court erred when it gave a first aggressor instruction. Moore did not object to this instruction at trial. He argues that the practical effect of a first aggressor instruction is to relieve the State of the burden of disproving self-defense. He argues this instructional error is reviewable by this court because it is a manifest error affecting a constitutional right. *See* RAP 2.5(a)(3). Moore argues the instruction was given in error because the evidence does not support the instruction.

### *Reviewability of unpreserved error*

This court ordinarily will not review a claim of error raised for the first time on review unless one of three exceptions exist. RAP 2.5(a). One exception is if the claim is for a manifest error affecting a constitutional right. RAP 2.5(a)(3). The appellant must demonstrate both that the purported error is of constitutional magnitude and that the error is "manifest." *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011). A "manifest" error is one that is "so obvious on the record that the error warrants appellate review." *State v. O'Hara*, 167 Wn.2d 91, 100, 217 P.3d 756 (2009). Once the defendant has

8

identified such an error, it is for the State to establish that the error was harmless beyond a reasonable doubt. *Gordon*, 172 Wn.2d at 676 n.2.

We note that Moore has failed to explicitly identify the constitutional right involved. We nevertheless proceed in determining whether the alleged constitutional error of giving the first aggressor instruction was obvious on the record.

When a defendant seeks to have a jury instructed on self-defense, the State in turn may seek a first aggressor instruction. Such an instruction informs the jury that self-defense is not available if the jury finds the defendant provoked the need to act in self-defense. *State v. Bea*, 162 Wn. App. 570, 577, 254 P.3d 948 (2011). Because such an instruction relieves the State of its burden of proving the absence of self-defense, such an instruction should be given sparingly. *Id.* at 575-76. A first aggressor instruction is proper where (1) the jury can reasonably determine from the evidence the defendant provoked the fight, (2) the evidence conflicts as to whether the defendant's conduct provoked the fight, or (3) the evidence shows the defendant made the first move by drawing a weapon. *State v. Stark*, 158 Wn. App. 952, 959, 244 P.3d 433 (2010). In determining whether the instruction was properly given, we view the evidence in the light most favorable to the party that requested the instruction. *Bea*, 162 Wn. App. at 577.

The evidence here supports giving the first aggressor instruction. Moore told Skogstad he was going to kill Molony. Physical evidence suggests Molony was several feet away from Moore when Moore shot Molony. Physical evidence also suggests Moore planted his own knife near Molony's body and his own knife sheath in Molony's back

9

pocket. Although Moore testified Molony provoked the fight, we must view the evidence in the light most favorable to the State. Viewing the evidence in this manner, the trial court properly gave the first aggressor instruction. For this reason also, the alleged error is not obvious on the record, so we decline to further review it.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

Moore next contends he received ineffective assistance of counsel. He argues his trial counsel was ineffective because (1) he failed to object to the State's comment during jury selection that this was not a capital case, (2) he failed to request the trial court to give a manslaughter instruction to the jury, and (3) he failed to object to evidence of a prior bad act.

A criminal defendant has a Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). The claim is reviewed de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish ineffective assistance of counsel, a defendant must prove the following two-pronged test:

> (1) [D]efense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). There is a strong presumption that counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011). To rebut this presumption, the defendant bears the burden of establishing that no conceivable legitimate tactic exists to explain counsel's performance. *Id.*

### 1. Failure to object during voir dire

Washington has a "long-standing rule that no mention may be made of sentencing in noncapital cases," and counsel's failure to object falls below prevailing professional norms. *State v. Townsend*, 142 Wn.2d 838, 847, 15 P.3d 145 (2001). In response to any mention of capital punishment, the trial judge should state generally that the jury is not to consider sentencing. *State v. Hicks*, 163 Wn.2d 477, 487, 181 P.3d 831 (2008). Based on that precedent, defense counsel's failure to object to the State's remarks that the case was not a capital case fell below an objective standard of reasonableness.

Nevertheless, Moore cannot show he was prejudiced by his counsel's failure to object. In *Townsend*, the State informed the jury during voir dire that the case was a very serious criminal case that involved a charge of first degree murder, but the case was not a capital case. *Townsend*, 142 Wn.2d at 842. The *Townsend* court held that defense counsel's failure to object to the State's comment did not prejudice the defendant, and thus was not ineffective assistance of counsel. *Id.* at 849. There, the only jury issue was premeditation, so the *Townsend* court reviewed the ample evidence of premeditation: Townsend brought a gun and had spoken to a friend about "'taking care of'" the victim.

*Id.* at 848. After Townsend shot the victim, perhaps accidently, a friend said the victim was still alive and recommended that he and Townsend take the victim to the hospital. *Id.* Instead, Townsend shot the victim in the head. *Id.* at 849.

Similar to *Townsend*, Moore brought a gun to confront Molony and had earlier told friends he was going to kill Molony. Also, after first shooting Molony at a distance, Moore fired several more shots into Molony and later stabbed him several times. Similar to *Townsend*, we determine that defense counsel's deficient performance did not prejudice Moore, in light of the overwhelming evidence that Moore did not act in self-defense. We, therefore, reject Moore's argument that his trial counsel's failure to object to the State's remarks during voir dire constituted ineffective assistance of counsel.

### 2. *Failure to request manslaughter instruction*

Where the claim of ineffective assistance of counsel is based upon counsel's failure to request a particular instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice. *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012).

A defendant is entitled to a lesser included offense jury instruction if two conditions are met. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). "First, each of the elements of the lesser offense must be a necessary element of the offense charged." *Id.* "Second, the evidence in the case must support an inference that [only] the lesser crime was committed." *Id.* at 448. The evidence must affirmatively

12

support the defendant's theory of the case; it is not enough that the jury might disbelieve the evidence pointing to guilt. *State v. Fernandez-Medina*, 141 Wn.2d 448, 456, 6 P.3d 1150 (2000).

Manslaughter can be a lesser included offense of first degree murder. *State v. Warden*, 133 Wn.2d 559, 562-63, 947 P.2d 708 (1997). A defendant who reasonably believes he is in imminent danger and needs to act in self-defense but negligently or recklessly uses more force than necessary is entitled to an instruction on manslaughter. *State v. Schaffer*, 135 Wn.2d 355, 358, 957 P.2d 214 (1998).

Moore's own testimony undermines his assertion that he was entitled to an instruction on manslaughter. He testified he saw Molony armed with a knife, which he first thought was a gun. He testified he was scared, he felt threatened, and he thought he was going to be killed.

> [State:] And so if he was moving while you were stabbing him, did he move off—off of his stomach? Did he expose any area other than his back?
> [Moore:] I have no idea, sir. That he was moving which is why I continued the attack. Again, you do not stop an attack when someone is trying to take you out. You take them out first. If you stop, you are very likely to be the one who does not walk away.

RP at 853. Moore's testimony is not that he negligently or recklessly used more force than was necessary to repel an attack. Moore testified he *intentionally* killed Molony in self-defense. Because the evidence does not affirmatively support a finding of manslaughter, Moore was not entitled to a manslaughter instruction. We conclude defense counsel was not ineffective for failing to request such an instruction.

### 3. *Failure to object to prior bad act evidence*

Evidence of a pertinent trait of a defendant's character is not admissible for the purpose of proving action in conformity with that character. ER 404(a). Exceptions to the rule exist. One exception is when the State elicits evidence to rebut to defendant's character evidence. ER 404(a)(1). When character evidence is admissible, it may be made on cross-examination by testimony of specific instances of conduct. ER 405(a).

Moore elicited testimony of his character from his friend Skogstad:

> [Defense counsel:] So—so [Mr. Moore] is your friend. You'd admit you know him pretty well.
> [Skogstad:] Yeah.
> [Defense counsel:] Did you know his personality pretty well?
> [Skogstad:] Yeah.
> [Defense counsel:] How would you describe his personality?
> [Skogstad:] Decent.
> . . . .
> [Defense counsel:] Okay. And, now, you're saying you didn't think [Moore would kill Molony]?
> [Skogstad:] Nah.
> [Defense counsel:] Why did you say that?
> [Skogstad:] Because I can't look at a friend who says somethin' like that—you just can't believe somethin' like that. I didn't think it was gonna happen—
> . . . .
> . . . honest—honestly with all my heart, I did not think it was gonna happen.

RP at 326-28. In rebuttal to this, the State asked:

> [State:] Did the defendant have somewhat of a temper?
> [Skogstad:] Not that I saw.
> [State:] Was there a prior time where he grabbed ahold of your throat one time?
> [Skogstad:] Yeah, but that was—we'd been out on a road trip. We went and looked at a car and somethin' like that, him and I. He didn't have

wheels, so we took my pickup. And—and I don't know what happened. It just—out of the clear blue, he reached out and grabbed my throat with his right hand, and I knocked it off with my right hand and told him he better not do that again. But that was the end of that.
[State:] That was not expected?
[Skogstad:] No. I have no idea where it even came from.

RP at 329. Because the State elicited the above testimony to rebut the character evidence Moore himself had introduced, the rebuttal questions were proper. We conclude Moore did not receive ineffective assistance of counsel when his attorney failed to object to the State's proper rebuttal questions.

D.   FIREARM ENHANCEMENT

Moore argues the jury returned a special verdict for two deadly weapon enhancements, but his sentence was erroneously enhanced with a deadly weapon enhancement and a firearm enhancement. Moore contends the firearm enhancement must be vacated.

Erroneous sentences may be challenged for the first time on appeal. *State v. Bahl,* 164 Wn.2d 739, 744, 193 P.3d 678 (2008). A sentencing court may not exceed the authority issued to it by the jury's determination, such as by imposing a sentence in violation of the defendant's Sixth Amendment right to have a jury decide a sentencing enhancement. *State v. Bainard,* 148 Wn. App. 93, 101, 199 P.3d 460 (2009) (citing *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)). We review this constitutional challenge de novo. *Id.*

15

A deadly weapon enhancement requires the jury to find that the defendant used a deadly weapon, as defined by statute, in the commission of the charged crime. RCW 9.94A.825. A firearm enhancement requires the jury to find that a firearm was used in the commission of the charged crime. RCW 9.94A.533(3); RCW 9.41.010.

Our review of the record confirms the State charged Moore with a deadly weapon enhancement and a firearm enhancement. At the conclusion of the case, the trial court provided the jury with instructions, including a special verdict form. The special verdict form was worded unconventionally, but the meaning is plain:

> QUESTION 1: Was the defendant armed with a deadly weapon that was [a] knife having a blade longer than three inches, at the time of the commission of the crime?
> ANSWER: YES (Write "yes" or "no")
> QUESTION 2: Was the defendant armed with a deadly weapon that was *a pistol, revolver, or any other firearm*, at the time of the commission of the crime?
> ANSWER: YES (Write "yes" or "no")

CP at 23 (emphasis added). Question 1 requires the jury to make a finding with respect to a deadly weapon enhancement, and question 2 requires the jury to make a finding with respect to a firearm enhancement. The jury answered yes to each question. The trial court thereafter properly sentenced Moore consistent with these two findings. We find no error in this.

E.    STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG) ARGUMENTS

Mr. Moore lists seven grounds for reversal in his SAG arguments. Many of his grounds have multiple subarguments, which we identify with lettered subparts. Rather

16

than take each listed argument and subargument in the order presented by Mr. Moore, we organize the SAG issues into subject matter.

SAG ISSUE 1: PROSECUTORIAL MISCONDUCT

Mr. Moore contends the State committed prosecutorial misconduct in three distinct ways. Specifically, Mr. Moore argues the State committed prosecutorial misconduct by (1) using the terms "murder" and "victim" throughout trial, (2) making arguments during closing that contradicted his testimony, and (3) eliciting perjury from Mr. Skogstad.

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). However, a defendant waives any error by failing to object to the prosecutor's improper conduct, unless that conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Id.* at 760-61.

In the context of closing arguments, the prosecutor has "'wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence.'" *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting *State v. Gregory*, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006)).

17

1.      *Ground #1: Use of terms "murder" and "victim" throughout trial*

A prosecutor does not engage in misconduct by arguing a position supported by the evidence. *State v. McKenzie*, 157 Wn.2d 44, 54, 134 P.3d 221 (2006). Similarly, when the evidence presented in a criminal trial indicates that the defendant is a particular type of criminal, the prosecutor may label the defendant, including using terms such as "murderer." *Id.* at 57. Here, the State presented evidence that Mr. Molony was a victim and that Mr. Moore was a murderer. There was no prosecutorial misconduct.

2.      *Ground #5A: Contradicting Mr. Moore's testimony during closing*

As discussed in the main opinion, the State had ample physical evidence to support its version of events that it argued to the jury. The prosecutor was permitted to argue the State's theory of the case and was not limited by Mr. Moore's testimony, even though Mr. Moore was the only living witness of Mr. Molony's killing.

3.      *Ground #7B: Eliciting perjury from Mr. Skogstad*

The asserted perjury relies on matters outside the trial record. Mr. Moore cites to discovery documents that show Mr. Skogstad made two slightly different statements than how he testified during trial. The substance of the statements was the same: in all of the statements, Mr. Skogstad said he heard Mr. Moore say he would shoot (or murder) that "mother[ ]," referring to Mr. Molony. If Mr. Moore wishes to discuss matters outside the record, he must present them in a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

18

SAG ISSUE 2: Ground #2A: IMPROPER ADMISSION OF EVIDENCE

Mr. Moore contends the trial court erred in admitting the knife and a BB gun.

However, Mr. Moore did not object to these items being admitted. Proper objection must

be made at trial to perceived errors in admitting evidence and failure to do so precludes

raising the issue on appeal. *State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985).

SAG ISSUE 3: INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Moore contends he received ineffective assistance of counsel, and makes five

arguments in this vein. The Sixth Amendment to the United States Constitution

guarantees a criminal defendant the right to effective assistance of counsel. *Strickland*,

466 U.S. at 685-86. "A claim of ineffective assistance of counsel is an issue of

constitutional magnitude that may be considered for the first time on appeal." *Kyllo*, 166

Wn.2d at 862. The claim is reviewed de novo. *Sutherby*, 165 Wn.2d at 883. To

establish ineffective assistance of counsel, a defendant must prove the following two-

pronged test:

> (1) [D]efense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*McFarland*, 127 Wn.2d at 334-35 (citing *Thomas*, 109 Wn.2d at 225-26). There is a

strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 42.

19

To rebut this presumption, the defendant bears the burden of establishing that no conceivable legitimate tactic exists to explain counsel's performance. *Id.*

      1.    *Grounds #3A & #3C: Failure to request a CrR 3.5 hearing or request a trial continuance*

Mr. Moore asserts his attorney provided ineffective assistance by not requesting a hearing to challenge the admissibility of his statements to the police. He implies that his mental capacity was so deficient at the time of the killing that his statements to police were not voluntary. He similarly asserts his attorney provided ineffective assistance by not requesting a trial continuance to address his mental health.

The record shows that the trial court ordered a medical examination that established that Mr. Moore was competent to proceed to trial. There was no need for defense counsel to request a trial continuance.

Moreover, defense counsel chose a trial strategy of self-defense as opposed to diminished capacity. Mr. Moore's statements to police were consistent with self-defense. Because allowing this evidence to be presented to the jury was consistent with Mr. Moore's defense and thus a legitimate trial tactic, defense counsel did not perform deficiently.

      2.    *Ground #3B: Failure to investigate diminished capacity defense*

Mr. Moore asserts his attorney provided ineffective assistance by not investigating his prior mental diagnoses, including posttraumatic stress disorder. Again, defense counsel sought to establish self-defense. Defense counsel might have determined that a

self-defense argument would be weakened by introducing evidence of diminished capacity. Because not introducing evidence of mental instability was a legitimate trial tactic, defense counsel did not perform deficiently.

      3.    *Ground #2B: Failure to object to prosecutor parading knife and gun in front of the jury*

Mr. Moore next argues that counsel provided ineffective assistance by not objecting to the prosecutor "parading" the knife and BB gun in front of the jury. There is no evidence in the record to support this assertion. If Mr. Moore wishes to discuss matters outside the record, he must present them in a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

      4.    *Ground #5B: Failure to object during prosecutor's closing argument*

Mr. Moore next argues that counsel provided ineffective assistance by not objecting to the prosecutor's statements during closing that were inconsistent with Mr. Moore's testimony of the killing. As discussed above, defense counsel did not have grounds to object given that the prosecutor was properly arguing from the forensic and physical evidence already present in the case.

      5.    *Ground # 7C: Failure to object to Mr. Skogstad's purported perjurious testimony*

Mr. Moore next argues that counsel provided ineffective assistance by not objecting to the alleged perjury of Mr. Skogstad. The alleged perjury requires a comparison of the statement or statements Mr. Skogstad made to law enforcement and his

testimony at trial. A comparison of the statements shows a slightly different phrasing of Mr. Moore's threat to kill Mr. Molony. Nevertheless, the gravamen of the threat is identical. As we stated previously on this point, because Mr. Moore's argument relies on evidence outside of the trial record, if Mr. Moore wishes to pursue this argument, he must do so through the personal restraint petition process.

SAG ISSUE 4: Ground #4: MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATIONS

Mr. Moore argues that the trial court failed to dismiss his case for speedy trial violations. The motion to dismiss was set for August 28. During the motion, the trial court asked when Mr. Moore's speedy trial date would expire. The State responded that speedy trial would expire on September 22. Defense counsel apparently agreed, because he did not contest the date provided by the State. The parties agreed to move the trial commencement date to September 9, and the record establishes that date as the actual commencement date of the trial. Because trial commenced prior to September 22, the trial court did not violate Mr. Moore's right to a speedy trial.

But even if the September 22 date was not accurate, Mr. Moore waived his challenge by failing to contest the date provided by the State. Moreover, toward the end of the August 28 hearing, the trial court inquired of Mr. Moore whether he understood that the new trial date of September 9 did not violate his speedy trial right. Mr. Moore said he understood and agreed, and initialed the order resetting the trial date.

22

SAG ISSUE 5: Ground #6: OMNIBUS HEARING

Mr. Moore argues that the omnibus hearings resulted in the parties exchanging no information. He acknowledges there is no current record of the omnibus hearings. If Mr. Moore wishes to argue matters outside the current record, the proper procedure is to bring a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

SAG ISSUE 6: Ground #7A: STATE WITHHELD EXCULPATORY EVIDENCE

Mr. Moore contends the State withheld exculpatory evidence from him. When interviewed by law enforcement, Mr. Moore said he heard that Mr. Molony wanted to kill him. In his argument here, he contends the State had an obligation to investigate what he told law enforcement, and the State's failure to investigate deprived him of a fair trial.

The State has an obligation to preserve and disclose evidence to the defendant when the evidence is material to a defendant's guilt or innocence. *State v. Judge*, 100 Wn.2d 706, 716, 675 P.2d 219 (1984). Although this obligation requires law enforcement to preserve the evidence that comes into its possession, it does not require law enforcement to search for exculpatory evidence. *Id.* at 717. If Mr. Moore learned from other people that Mr. Molony had threatened him, Mr. Moore should have advised his attorney so his attorney could have contacted these other people and potentially have them testify.

F.     APPELLATE COSTS

Moore asks this court to deny the State an award of appellate costs should it prevail on appeal. By general order adopted June 10, 2016, we require such a motion to

23

be contained in the appellant's opening brief or filed within 60 days thereof. Moore's opening brief was filed several months before we adopted the June 2016 order. Noting that he could not possibly comply with the order, Moore cites RAP 1.2(c) and requests we waive the time requirements of the order so to best serve the ends of justice. Waiver of the time requirement in this situation would serve the ends of justice, so we agree to waive them and consider Moore's request.

In Moore's certified report as to continued indigency, Moore notes he has property worth $47,000. We conclude Moore is not indigent and deny his request for waiver of appellate costs.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.